## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

------------------------------------------------------------------- X

**VICTOR CANO, OSCAR CANO, YOLANDA**
**DURAN, HECTOR HERNANDEZ, MAIRA**
**HERNANDEZ, ROSA MELENDEZ, TERESA**
**MORAN, LORENA PALACIOS, LETICIA RIVAS**,
and **JULIO SANDOVAL**,

     Plaintiffs,

 -against-

**G.T. CAR WASH, INC. d/b/a TENAFLY SOFT**
**CLOTH CAR WASH, BRUCE MOLER**, an
Individual, **GEORGE KELLY**, an Individual,
**TIMOTHY WIEGEL, (a/k/a TIMOTHY J.**
**WIEGEL and JOHN WIEGEL)** an Individual, **ABC**
**CORPORATIONS 1-5,** and **JOHN DOES 1-5**,

     Defendants.

------------------------------------------------------------------- X

**CIVIL CASE NO.**

**COMPLAINT**

   Plaintiffs Victor Cano, Oscar Cano, Yolanda Duran, Hector Hernandez, Maira

Hernandez, Rosa Melendez, Teresa Moran, Lorena Palacios, Leticia Rivas, and Julio Sandoval

(collectively "plaintiffs") by their attorneys the Law Offices of Mitchell Schley, LLC,

complaining of defendants G.T. Car Wash, Inc. d/b/a Tenafly Soft Cloth Car Wash, Bruce

Moler, George Kelly, Timothy Wiegel (a/k/a Timothy J. Wiegel and John Wiegel), John Does 1-

5 and ABC Corporations 1-5, (all collectively "defendants"), alleges as follows:

## NATURE OF THE ACTION

   1. This action is brought to recover unpaid overtime wages and all available relief

pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), the New Jersey

State Wage and Hour Law, N.J.S.A. 34:11-56a *et seq*. and N.J.A.C. 12:56 *et seq*. ("NJWHL"),

and the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. 34:11-4.1 *et seq.*

2.      G.T. Car Wash, Inc. d/b/a Tenafly Soft Cloth Car Wash ("Tenafly Car Wash") offers interior and exterior car washing services.  It is located at 277 County Road, Tenafly, New Jersey 07670.

3.      Plaintiffs have been unlawfully deprived of overtime pay, minimum wage and gratuities because of the employers' disregard of the requirements of federal and state labor laws.

4.      Plaintiffs seek unpaid minimum wages overtime wages, liquidated damages, pre- and post-judgment interest, injunctive and declaratory relief against defendants' unlawful actions, and attorneys' fees and costs pursuant to the FLSA, NJWHL, and NJWPL.

## JURISDICTION

5.      This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337. The Court has supplemental jurisdiction over plaintiffs' claims under the NJWHL and NJWPL pursuant to 28 U.S.C. § 1367.

6.      The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202

## VENUE

7.      Venue is proper in the District of New Jersey under 28 U.S.C. § 1391 because a substantial part of the conduct alleged herein occurred in this judicial district and defendants reside in this district.

## THE PARTIES

**Plaintiffs**

8.      Plaintiff Victor Cano is a resident of Garnerville, New York.

9.      Victor Cano was employed as a car wash worker by Tenafly Car Wash from July 15, 2013 until April 2019.

10.     At all relevant times, Victor Cano was an employee engaged in commerce or the production of goods for commerce on behalf of defendants within the meaning of the FLSA.

11.     At all relevant times, Victor Cano was an employee of defendants within the meaning of the FLSA, NJWHL, and NJWPL.

12.     Plaintiff Oscar Cano is a resident of Garnerville, New York.

13.     Oscar Cano was employed as a car wash worker by Tenafly Car Wash from April 2017 until May 2019.

14.     At all relevant times, Oscar Cano was an employee engaged in commerce or the production of goods for commerce on behalf of defendants within the meaning of the FLSA.

15.     At all relevant times, Oscar Cano was an employee of defendants within the meaning of the FLSA, NJWHL, and NJWPL.

16.     Plaintiff Yolanda Duran is a resident of Englewood, New Jersey.

17.     Yolanda Duran was employed as a car wash worker by Tenafly Car Wash from March 2011 until March 2019.

18.     At all relevant times, Yolanda Duran was an employee engaged in commerce or the production of goods for commerce on behalf of defendants within the meaning of the FLSA.

19.     At all relevant times, Yolanda Duran was an employee of defendants within the meaning of the FLSA, NJWHL, and NJWPL.

20.     Plaintiff Hector Hernandez is a resident of Nyack, New York.

21.     Hector Hernandez was employed as a car wash worker by Tenafly Car Wash from January 2017 until May 2019.

3

22. At all relevant times, Hector Hernandez was an employee engaged in commerce or the production of goods for commerce on behalf of defendants within the meaning of the FLSA.

23. At all relevant times, Hector Hernandez was an employee of defendants within the meaning of the FLSA, NJWHL, and NJWPL.

24. Plaintiff Maira Hernandez is a resident of Englewood, New Jersey.

25. Maira Hernandez was employed as a car wash worker by Tenafly Car Wash from September 2012 until April 2019.

26. At all relevant times, Maira Hernandez was an employee engaged in commerce or the production of goods for commerce on behalf of defendants within the meaning of the FLSA.

27. At all relevant times, Maira Hernandez was an employee of defendants within the meaning of the FLSA, NJWHL, and NJWPL.

28. Plaintiff Rosa Melendez is a resident of Englewood, New Jersey.

29. Rosa Melendez was employed as a car wash worker by Tenafly Car Wash from August 2011 until April 2019.

30. At all relevant times, Rosa Melendez was an employee engaged in commerce or the production of goods for commerce on behalf of defendants within the meaning of the FLSA.

31. At all relevant times, Rosa Melendez was an employee of defendants within the meaning of the FLSA, NJWHL, and NJWPL.

32. Plaintiff Teresa Moran is a resident of Englewood, New Jersey.

33. Teresa Moran was employed as a car wash worker by Tenafly Car Wash from June 2016 until March 2019.

4

34.     At all relevant times, Teresa Moran was an employee engaged in commerce or the production of goods for commerce on behalf of defendants within the meaning of the FLSA.

35.     At all relevant times, Teresa Moran was an employee of defendants within the meaning of the FLSA, NJWHL, and NJWPL.

36.     Plaintiff Lorena Palacios is a resident of Englewood, New Jersey.

37.     Lorena Palacios was employed as a car wash worker by Tenafly Car Wash from April 2016 to present.

38.     At all relevant times, Lorena Palacios was an employee engaged in commerce or the production of goods for commerce on behalf of defendants within the meaning of the FLSA.

39.     At all relevant times, Lorena Palacios was an employee of defendants within the meaning of the FLSA, NJWHL, and NJWPL.

40.     Plaintiff Leticia Rivas is a resident of Englewood, New Jersey.

41.     Leticia Rivas was employed as a car wash worker by Tenafly Car Wash from March 2016 to present.

42.     At all relevant times, Leticia Rivas was an employee engaged in commerce or the production of goods for commerce on behalf of defendants within the meaning of the FLSA.

43.     At all relevant times, Leticia Rivas was an employee of defendants within the meaning of the FLSA, NJWHL, and NJWPL.

44.     Plaintiff Julio Sandoval is a resident of Englewood, New Jersey.

45.     Julio Sandoval was employed as a car wash worker by Tenafly Car Wash from March 2015 until May 2019.

46.     At all relevant times, Julio Sandoval was an employee engaged in commerce or the production of goods for commerce on behalf of defendants within the meaning of the FLSA.

47.     At all relevant times, Julio Sandoval was an employee of defendants within the meaning of the FLSA, NJWHL, and NJWPL.

**Defendants**

48.     Defendant G.T. Car Wash, Inc. owns and does business as Tenafly Soft Cloth Car Wash.

49.     Tenafly Car Wash has been at all relevant times an employer engaged in commerce or in the production of goods for commerce within the meaning of the FLSA.

50.     At all relevant times, Tenafly Car Wash has had an annual gross volume of sales in excess of $500,000 within the meaning of the FLSA.

51.     Tenafly Car Wash's car wash workers, including plaintiffs, handle and sell goods that have been moved in, or produced for, commerce within the meaning of the FLSA.

52.     Tenafly Car Wash is an employer within the meaning of the FLSA.

53.     Tenafly Car Wash is an employer within the meaning of the NJWHL.

54.     Tenafly Car Wash is an employer within the meaning of the NJWPL.

55.     Defendant Bruce Moler ("Moler") is an owner of Tenafly Car Wash.

56.     Moler is an officer of Tenafly Car Wash.

57.     Moler is a manager of Tenafly Car Wash.

58.     Moler is sued individually in his capacity as an owner, officer and/or manager of Tenafly Car Wash.

59.     At all relevant times, Moler has been plaintiffs' employer under the FLSA, NJWHL, and NJWPL because he exercised sufficient managerial and operational control and policy-making authority over Tenafly Car Wash's operations and established the car wash workers' terms and conditions of employment.

60.     Moler has the power to, and did, hire and fire employees, establish and implement pay practices, work assignments, scheduling, control labor relations and personnel policies and practices, determine wages, and maintain time and payroll records.

61.     As an owner, officer and/or manager of Tenafly Car Wash, Moler acted directly or indirectly in the interest of Tenafly Car Wash in relation to an employee.

62.     Moler is personally and jointly and severally liable for the violations of the FLSA, NJWHL, and NJWPL by Tenafly Car Wash.

63.     Defendant George Kelly ("Kelly") is an owner of Tenafly Car Wash.

64.     Kelly is an officer of Tenafly Car Wash.

65.     Kelly is a manager of Tenafly Car Wash.

66.     At all relevant times, Kelly was plaintiffs' employer under the FLSA, NJWHL, and NJWPL because he exercised sufficient managerial and operational control and policy-making authority over Tenafly Car Wash's operations and established the car wash workers' terms and conditions of employment.

67.     Kelly had the power to, and did, hire and fire employees, establish and implement pay practices, work assignments, scheduling, control labor relations and personnel policies and practices, determine wages, and maintain time and payroll records.

68.     As an owner, officer and/or manager of Tenafly Car Wash, Kelly acted directly or indirectly in the interest of Tenafly Car Wash in relation to an employee.

69.     Kelly is personally and jointly and severally liable for the violations of the FLSA, NJWHL, and NJWPL by Tenafly Car Wash.

70.     Defendant Timothy Wiegel ("Wiegel") is an owner of Tenafly Car Wash.

71.     Wiegel is an officer of Tenafly Car Wash.

72.     Wiegel is a manager of Tenafly Car Wash.

73.     At all relevant times, Wiegel was plaintiffs' employer under the FLSA, NJWHL, and NJWPL because he exercised sufficient managerial and operational control and policy-making authority over Tenafly Car Wash's operations and established the car wash workers' terms and conditions of employment.

74.     Wiegel had the power to, and did, hire and fire employees, establish and implement pay practices, work assignments, scheduling, control labor relations and personnel policies and practices, determine wages, and maintain time and payroll records.

75.     As an owner, officer and/or manager of Tenafly Car Wash, Wiegel acted directly or indirectly in the interest of Tenafly Car Wash in relation to an employee.

76.     Wiegel is personally and jointly and severally liable for the violations of the FLSA, NJWHL, and NJWPL by Tenafly Car Wash.

77.     Defendants John Doe 1 through John Does 5 are presently unknown persons who, directly or indirectly, directed, aided, abetted, and/or assisted with creating and/or executing the policies and practices, including the processing of payroll, of defendants, which resulted in defendants' failing to pay plaintiffs proper compensation pursuant to the FLSA, NJWHL, and NJWPL and who are personally and individually liable for the violations alleged herein.

78.     Defendants ABC Corporation 1 though ABC Corporation 5 are presently unknown entities which employed plaintiff and are employers within the meaning of the FLSA, NJWHL, and NJWPL and which are liable for the violations alleged herein.

### FACTUAL ALLEGATIONS

79.     Throughout their employment, plaintiffs' primary duties included washing, drying, vacuuming, and cleaning motor vehicles.

80.     At all relevant times, Tenafly Car Wash has been open for business seven days a week.

81.     Throughout plaintiffs' employment, defendants provided weekly schedules, typically on Sundays, with each employee's scheduled shift for the upcoming week.

82.     At all relevant times, defendants recorded plaintiffs' and other car wash workers' hours of employment and did not have employees utilize a time clock or sign in and out of scheduled shifts for themselves.

83.     At all relevant times, plaintiffs consistently worked over 40 hours a week, often reaching 70 hours per week.

84.     Plaintiffs were not told by defendants what they were paid per hour, but were regularly paid less than the applicable state and federal minimum wage.

85.     Plaintiffs were entitled to be paid state and federal minimum wage.

86.     Plaintiffs were entitled to be paid at a rate of one-and-one-half (1 ½) times their hourly rate for rate for hours worked in excess of 40 per workweek.

87.     Defendants failed to pay plaintiffs at the rate of one-and-one-half (1 ½) times their hourly rate for rate for hours worked in excess of 40 per workweek.

88.     Plaintiffs were not exempt from overtime pay pursuant to the FLSA and the NJWHL.

89.     Defendants did not pay plaintiffs state minimum wage of $8.85 per hour, or state overtime rate of $13.27 per hour during 2019. For example, for the pay period of January 28, 2019, through February 3, 2019, plaintiffs were not paid at state or federal minimum wage rate, nor were plaintiffs paid at time and one-half their hourly rate for hours worked in excess of 40 per workweek.

90.     By way of example, Victor Cano was scheduled to work and did work 69 hours during the week of January 28, 2019, through February 3, 2019. However, Victor Cano's employee pay stub falsely states that he worked 26.32 hours at a rate of $6.20 per hour.

91.     Defendants did not pay plaintiffs state minimum wage of $8.60 per hour, or state overtime rate of $12.90 per hour during 2018. For example, for the pay period of October 8, 2018, through October 14, 2018, plaintiffs were not paid at state or federal minimum wage rate, nor were plaintiffs paid at time and one-half their hourly rate for hours worked in excess of 40 per workweek.

92.     By way of example, Yolanda Duran was scheduled to work and did work 58 hours during the week of October 8, 2018, through October 14, 2018. However, Yolanda Duran's employee pay stubs falsely states that Yolanda Duran worked 23.10 hours at a rate of $6.20 per hour.

93.     Defendants did not pay plaintiffs state minimum wage of $8.44 per hour, or state overtime rate of $12.66 per hour during 2017. For example, for the pay period of June 12, 2017, through June 18, 2017, employed plaintiffs were not paid at state or federal minimum wage rate, nor were plaintiffs paid at time and one-half their hourly rate for hours worked in excess of 40 per workweek.

94.     By way of example, Maira Hernandez typically worked 40 to 50 hours per week in 2017.  However, Maira Hernandez's 2017 employee pay stubs falsely state that she typically worked 22 to 29 hours per week at a rate of $6.20 per hour. For instance, Maira Hernandez's employee pay stub for the pay period of June 12, 2017, through June 18, 2017, falsely states that she worked 22.56 hours at a rate of $6.20 per hour.

10

95.    Defendants did not pay plaintiffs state minimum wage of $8.38 per hour, or state overtime rate of $12.57 per hour during 2016. For example, for the pay period of August 29, 2016, through September 4, 2016, plaintiffs were not paid at state or federal minimum wage rate, nor were plaintiffs paid at time and one-half their hourly rate for hours worked in excess of 40 per workweek.

96.    By way of example, Maira Hernandez typically worked 40 to 50 hours per week in 2016. However, Maira Hernandez's 2016 employee pay stubs falsely state that she typically worked 22 to 29 hours per week at a rate of $6.13 per hour. For instance, Maira Hernandez's employee pay stub for the pay period of August 29, 2016, through September 4, 2016, falsely states that she worked 23.21 hours at a rate of $6.13 per hour.

97.    By way of example, in 2016, 2017, 2018, and 2019, Teresa Moran often worked between 40 to 50 hours a week and was often paid $200.00 in cash for that entire week's work. Thus, Teresa Moran was averaging $4.50 per regular hour worked.

98.    By way of example, in 2016, 2017, 2018, and 2019, Yolanda Duran often worked 50 hours a week and was often paid $240.00 in cash for the entire week's work. Thus, Yolanda Duran was averaging $4.80 per regular hour worked.

99.    Throughout their employment, plaintiffs were paid on a weekly basis.

100.    Throughout their employment, plaintiffs were always paid in cash.

101.    Each day, Tenafly Car Wash collects tips from customers in one of two containers.

102.    Every night the tip container is put in the managers' office.

103.    Each Monday, Wiegel or Kelly paid plaintiffs.

104.    Defendants do not provide the plaintiffs with a written record of what tips were collected from customers.

105.    On many occasions, Victor Cano and Julio Sandoval have counted these tips before they were delivered to the managers' office, and know that the total tips for each week were greater than the amount distributed to the car wash workers.

106.    Plaintiffs are paid when defendants give them a stack of cash wrapped in a pay stub, and for other employees a stack of cash wrapped in a piece of paper.

107.    Plaintiffs do not know how defendants calculate their weekly payment.

108.    The pay stub wrapped around the cash is a pay stub for the correct time period, but the hours listed are significantly less than the actual hours the employee worked that week.

109.    The pay stub list tips as a source of income.

110.    Defendants did not provide Plaintiffs with the required notice informing them of any intention of defendants to take a tip credit toward defendants' obligations to pay minimum wages and/or overtime pursuant to the FLSA and NJWHL.

111.    Under the FLSA, NJWHL, and NJWPL, employers are prohibited from sharing in the tips received by "tipped employees."

112.    The FLSA, NJWHL, and NJWPL permit employees to participate in a "tip share" where tipped employees split their tips with other tipped employees. The tip share is unlawful, however, where a non-tipped employee, such an owner or manager, receives a portion of the tips.

113.    Defendants regularly retained a portion of the tips for themselves.

114.    Defendants did not report to the plaintiffs the amount of tips customers left in the tip container and did not keep accurate records of wages and/or tips earned by plaintiffs during each payroll week.

115.    Defendants failed to post, in a conspicuous place, pursuant to N.J.S.A. 34:11-56a21, the "New Jersey State Wage and Hour Law Abstract," setting forth the state minimum wage and overtime requirements in English and Spanish.

116.    Defendants failed to post, in a conspicuous place, pursuant to FLSA, 29 U.S.C. § 207, *et seq*., a "Fair Labor Standards Act Poster (Minimum Wage Poster)," outlining the provisions of the FLSA, in English and in Spanish.

117.    At all relevant times, defendants willfully disregarded and purposely evaded record-keeping requirements by neglecting to maintain accurate and complete time records and payroll records.

118.    At all relevant times, all plaintiffs were paid only in cash.

119.    At all relevant times, defendants provided some plaintiffs with pay stubs which contained false hours worked per week.

120.    The foregoing practices by defendants were done willfully to disguise the actual number of hours plaintiffs worked and to avoid paying plaintiffs properly for all hours worked and for overtime pay due.

121.    At all relevant times, defendants failed to pay plaintiffs federal minimum wage in each and every weekly pay period they worked at Tenafly Car Wash, including pay periods ending on March 25, 2016, March 31, 2017, March 30, 2018 and March 29, 2019.

122.    At all relevant times, defendants failed to pay plaintiffs New Jersey minimum wage in each and every weekly pay period they worked at Tenafly Car Wash, including pay periods ending on March 25, 2016, March 31, 2017, March 30, 2018 and March 29, 2019.

13

123. At all relevant times, defendants failed to pay plaintiffs federal and New Jersey overtime pay in each and every weekly pay period they worked at Tenafly Car Wash, including pay periods ending on March 25, 2016, March 31, 2017, March 30, 2018 and March 29, 2019.

124. At all relevant times, defendant failed to distribute all tips due to plaintiffs in each and every weekly pay period they worked at Tenafly Car Wash, including pay periods ending on March 25, 2016, March 31, 2017, March 30, 2018 and March 29, 2019.

### COUNT I
### (Fair Labor Standards Act - Minimum Wage)

125. Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

126. Defendants were required to pay plaintiffs federal minimum wage for all hours of worked.

127. Defendants have failed to pay plaintiffs the federal minimum hourly wages to which they are entitled under the FLSA.

128. Defendants were not eligible to avail themselves of a tipped minimum wage rate under the FLSA because defendants were required, but failed, to inform plaintiffs of defendants' intention to take a tip credit pursuant to 29 CFR § 531.59.

129. Separately, defendants were not eligible to avail themselves of a tipped minimum wage rate under the FLSA because defendants distributed the tip money to persons other than tipped car wash workers in violation of 29 CFR § 531.51.

130. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of plaintiffs.

131. Defendants' violations of the FLSA have been willful and, therefore, a three-year statute of limitations applies pursuant to the FLSA, 29 U.S.C. § 255(a).

132.    As a result of defendants' willful violations of the FLSA, plaintiffs have suffered damages by being denied overtime pay in accordance with the FLSA and are entitled to recovery of such amounts, liquidated damages, pre-judgment and post-judgment interest, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## COUNT II
### (New Jersey Wage and Hour Law – Unpaid Minimum Wage)

133.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

134.    Defendants were required to pay plaintiffs New Jersey minimum wage for all hours worked.

135.    Defendants failed to pay plaintiffs the minimum hourly wages to which they are entitled under the NJWHL.

136.    Defendants were not eligible to avail themselves of a tipped minimum wage rate under the NJWHL because defendants were required, but failed, to inform plaintiffs of defendants' intention to take a tip credit under the NJWHL and supporting New Jersey regulations.

137.    Separately, defendants were not eligible to avail themselves of a tipped minimum wage rate under the NJWHL because defendants distributed the tip money to persons other than car wash workers in violation of the NJWHL and supporting New Jersey regulations.

138.    Defendants have willfully violated the NJWHL by knowingly and intentionally failing to pay plaintiffs minimum hourly wages.

139.    As a result of defendants' violations of the NJWHL, plaintiffs are entitled to recover their unpaid wages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

15

## COUNT III
### (Fair Labor Standards Act - Unpaid Overtime)

140.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

141.    Defendants are required to pay plaintiffs one-and-one-half (1½) times the regular rate of pay for all hours they worked in excess of 40 in a workweek pursuant to the overtime wage provisions of the FLSA, 29 U.S.C. § 207, *et seq*.

142.    Defendants have failed to pay plaintiffs the overtime wages to which they are entitled under the FLSA, even though plaintiffs have regularly worked more than 40 hours per workweek.

143.    During 2016, 2017, 2018, and 2019, the paystubs of the plaintiffs for most pay periods listed fewer hours than the plaintiffs actually worked that week.

144.    For example, Victor Cano, Oscar Cano, Yolanda Duran, Hector Hernandez, Maira Hernandez, Rosa Melendez, Teresa Moran, Lorena Palacios, and Julio Sandoval were all scheduled, in advance, by Defendants to work more than 40 hours during the week of January 27, 2019, as car wash workers.

145.    Victor Cano was scheduled to work and worked 69 hours during the week of January 28, 2019, through February 3, 2019, as a car wash worker.

146.    Victor Cano's Employee pay stub issued by defendants listed his total hours worked for the week of January 28, 2019, through February 3, 2019, as 26.32.

147.    Victor Cano's paystub likewise listed his hourly rate, for each hour worked, as $6.20.

148.    Defendants paid Victor Cano, in cash, a total of $550.00 for the week of January 28, 2019 through February 3, 2019.

149.    Victor Cano's regular hourly rate is New Jersey minimum wage, which was $8.85 for the week of January 28, 2019 through February 3, 2019.

150.    Thus that week, Defendants owed Victor Cano $354.00 in base pay and $382.80 in overtime pay for a total of $736.80 but he was only paid $550.00 that week.

151.    Most, if not all, of the pay stubs issued to Victor Cano listed his total hours worked per week as between 22 hours and 32 hours, at an hourly rate of $6.20.

152.    Victor Cano worked between 50 and 70 hours every workweek.

153.    Defendants were aware or should have been aware that the practices described in this Claim were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of plaintiffs.

154.    Defendants' violations of the FLSA have been willful and, therefore, a three-year statute of limitations applies pursuant to the FLSA, 29 U.S.C. § 255(a).

155.    As a result of defendants' willful violations of the FLSA, plaintiffs have suffered damages by being denied overtime pay in accordance with the FLSA and are entitled to recovery of such amounts, liquidated damages, pre- and post-judgment interest, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. § 216(b).

**COUNT IV**
**(New Jersey Wage and Hour Law - Unpaid Overtime)**

156.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

157.    Under the NJWHL, defendants are required to pay plaintiffs one-and-one-half (1 ½) times the regular rate of pay for all hours they worked in excess of 40 hours in a workweek.

158.    Plaintiffs have regularly worked more than 40 hours per week.

159.    Defendants have failed to pay plaintiffs the overtime wages to which they are entitled under the NJWHL.

160.    Defendants were aware or should have been aware that the practices described in this Claim were unlawful and have not made a good faith effort to comply with the NJWHL with respect to the compensation of plaintiffs.

161.    Defendants have willfully violated the NJWHL by knowingly and intentionally failing to pay plaintiffs overtime wages.

162.    Due to defendants' willful violations of the NJWHL, plaintiffs are entitled to recover their unpaid overtime wages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

### COUNT V
### (Fair Labor Standards Act - Unlawful Retention of Tips)

163.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

164.    As per the U.S. Department of Labor's regulations, 29 C.F.R. § 531.52, tips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA.

165.    Each week, defendants retained a portion of the tips for themselves in violation of 29 C.F.R. § 531.51, which states that a tip credit may be taken only with respect to wage payments to those employees whose occupations are those of "tipped employees."

166.    Defendants were not tipped employees within the meaning of 29 C.F.R. § 531.51.

167.    For example, in 2016, 2017, 2018, and 2019, defendants withheld a portion of each week's weekly tips for themselves.

168.    By unlawfully participating in the tip pool or sharing arrangement and retaining customer tips belonging to plaintiffs, defendants violated 29 C.F.R. § 531.52.

169.    As a result of defendants' willful violations of the FLSA, plaintiffs suffered damages by being denied wages in accordance with the FLSA and are entitled to recovery of

18

such amounts, liquidated damages, pre- and post-judgment interest, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## COUNT VI
### (New Jersey Wage Payment Law - Unlawful Retention of Tips)

170.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

171.    As per the New Jersey Department of Labor Regulations, N.J.A.C 12:56-8.4(b), gratuities are the property of the tipped employee.

172.    Gratuity is defined as "cash received by an employee for services rendered for an employer or customer of an employer." N.J.A.C. 12:56-8.1.

173.    Under the NJWPL, N.J.S.A. 34:11-4.4, no employer may withhold or divert any portion of an employee's wages.

174.    Defendants illegally misappropriated, withheld, and diverted plaintiffs' tips in violation of NJWPL and its regulations.

175.    In 2016, 2017, 2018, and 2019, defendants withheld from plaintiffs a portion of each week's tips for themselves.

176.    Due to defendants' willful violations of the NJWPL, plaintiffs are entitled to recover damages in the amount of unpaid wages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court enter a judgment:

a.    declaring that defendants have violated the overtime provisions of the FLSA and NJWHL;

b.    declaring that defendants have violated the minimum wage provisions of the FLSA and NJWHL;

19

c.     declaring that defendants have unlawfully participated in Tenafly Car Wash's tip pool arrangement and retained portions of tips intended for plaintiffs in violation of the FLSA, NJWHL, and NJWPL;

d.     declaring that defendants' violations of the FLSA were willful;

e.     disgorging from defendants and ordering that they remit back the amount of tips misappropriated from the wages of plaintiffs;

f.     awarding plaintiffs damages for unpaid overtime compensation, unpaid wages, and misappropriated tips under the FLSA, NJWHL, and NJWPL;

g.     awarding plaintiffs liquidated damages under the FLSA;

h.     awarding plaintiffs pre- and post-judgment interest under the FLSA, NJWHL, and NJWPL;

i.     awarding plaintiffs reasonable attorneys' fees and costs pursuant to the FLSA, NJWHL, and NJWPL, as permitted; and

j.     awarding such other and further relief as the Court deems just and proper.

**Law Offices of Mitchell Schley, LLC**

By: _s/ Mitchell Schley_
Mitchell Schley
197 Route 18, Suite 3000
East Brunswick, NJ 08816
(732) 325-0318
mschley@schleylaw.com

*Attorneys for Plaintiffs*

Dated:  June 14, 2019